O
JS-6

# United States District Court
# Central District of California

LAURA ROWELL,

    Plaintiff,

    v.

UNITED PARCEL SERVICE, INC. et al.,

    Defendants.

Case № 5:23-cv-01002-ODW (BFMx)

**ORDER GRANTING MOTION TO REMAND [10]**

## I. INTRODUCTION

Plaintiff Laura Rowell moves to remand this action to the Superior Court of California, County of Riverside for lack of subject matter jurisdiction. (Mot. Remand ("Motion" or "Mot."), ECF No. 10.) Rowell argues that Defendant United Parcel Service, Inc. ("UPS") fails to meet its burden to establish diversity jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy is less than the jurisdictional threshold of $75,000. (*Id.* at 6–7.[1]) Rowell also argues that the Court lacks federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 7.) For the reasons discussed below, the Court **GRANTS** the Motion and **REMANDS** this action to the Riverside County Superior Court.[2]

---

[1] Pinpoint citations to the Motion refer to the pagination supplied by the CM/ECF system.

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

On or about November 29, 2022, UPS hired Rowell as a seasonal delivery helper. (Notice of Removal Ex. B ("Compl.") ¶ 17, ECF No. 1-2.) Rowell's seasonal employment was scheduled to conclude at the end of January. (Decl. Christine Castaldi-Inman ISO Notice of Removal ("Castaldi-Inman Decl.") ¶ 3, ECF No. 1-5; Decl. Laura Rowell ISO Mot. ("Rowell Decl.") ¶ 2, ECF No. 10-1.) Rowell alleges she was sexually harassed by a co-worker throughout her employment and that she reported the alleged harassment to her employer. (Compl. ¶¶ 19–20.) On December 20, 2022, an investigator for UPS contacted Rowell regarding her complaints of harassment. (*Id.* ¶ 21.) On January 6, 2023, the UPS investigator informed Rowell that the investigation was closed. (*Id.* ¶ 22.) Rowell alleges that, from that date onwards, UPS never contacted her again and effectively terminated her employment. (*Id.*)

On April 24, 2023, Rowell filed this action in Riverside County Superior Court. (Notice of Removal ("NOR") ¶ 1, ECF No. 1.) In her Complaint, Rowell asserts six causes of action: (1) discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), (2) harassment in violation of FEHA, (3) retaliation in violation of FEHA, (4) failure to prevent discrimination, harassment, and retaliation in violation of FEHA, (5) wrongful termination, and (6) common law negligent hiring, supervision, and retention. (Compl. ¶¶ 29–84.) Rowell seeks relief in the form of compensatory damages, declaratory judgment, injunctive relief, punitive damages, and attorneys' fees. (*Id.* at 14–15.) On June 1, 2023, UPS removed this case to federal court on the basis of both diversity and federal question jurisdiction. (*See generally* NOR.) Rowell timely moves for remand. *See* 28 U.S.C. § 1447(c).

## III. LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in a state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.

28 U.S.C. § 1441(a). Federal district courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1331, 1332(a).

There is a strong presumption that a court is without jurisdiction until affirmatively proven otherwise. *See Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). The removing party "bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." *Lewis v Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010).

## IV. DISCUSSION

Rowell makes two arguments for why this case should be remanded. First, Rowell argues that diversity jurisdiction does not exist because the amount in controversy does not exceed $75,000. (Mot. 6–7.) Second, Rowell argues that federal question jurisdiction does not exist because this action does not arise under federal law. (Mot. 7–8.) The Court addresses each argument in turn.

**A.  Diversity Jurisdiction**

Rowell does not dispute that the parties are diverse. (NOR ¶¶ 12–13; *see generally* Mot.) Therefore, the only issue material to diversity jurisdiction is whether the action satisfies the amount-in-controversy threshold. Here, Rowell seeks compensatory damages, emotional distress damages, punitive damages, attorneys' fees, and injunctive relief. (*See generally* Compl; NOR ¶¶ 17–24.)

*1. Legal Standard*

"The amount in controversy is not a prospective assessment of [a] defendant's liability." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (alteration in original; internal quotation marks omitted). "Rather, it is the amount at stake in the underlying litigation." *Id.* (internal quotation marks omitted). Thus, even

though the amount in controversy "is assessed at the time of removal, [it] does *not* mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Id.* (emphasis in original). In other words, the amount in controversy is "not limited to damages incurred prior to removal," *id.* at 414, but "includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails," *id.* at 418.

*2. Lost Wages*

The Court first considers the amount placed in controversy by Rowell's claim for lost wages. Generally, courts may separate lost wages into two categories: "past wages—i.e., lost wages between the date of Plaintiff's termination and the date of removal—and future wages—i.e., lost wages between the date of removal and trial." *Fisher v. HNTB Corp.*, No. 2:18-cv-08173-AB (MRWx), 2018 WL 6323077, at *5 n.7 (C.D. Cal. Dec. 3, 2018). When the date of a trial is not set, courts have found one year from the date of removal to be a conservative trial date estimate. *See Calhoun v. Consol. Disposal Serv., LLC*, No. 19-cv-2315-MWF (MRWx), 2019 WL 2522677, at *3 (C.D. Cal, June 18, 2019); *Reyes v. Staples the Off. Superstore, LLC*, No. 2:19-cv-07086-CJC (SKx), 2019 WL 4187847, at *3 (C.D. Cal. Sept. 3, 2019).

In this case, however, Rowell's wages through the date of removal and beyond are not in controversy. "[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926 (9th Cir. 2019) (emphasis in original). Both Rowell and UPS agree that Rowell's employment as a seasonal employee was scheduled to be terminated at the end of January 2023. (Castaldi-Inman Decl. ¶ 3; Rowell Decl. ¶ 2.) Therefore, the Court calculates Rowell's lost wages from the date of her alleged wrongful termination, January 6, 2023, (Compl. ¶ 22), through the end of her seasonal employment period, January 31, 2023.

Considering the above, the Court need not address the merits of Rowell's argument that the amount in controversy should be reduced because Rowell mitigated

her damages by obtaining new, higher paying employment within one month of being terminated by UPS. (NOR 5.) However, the Court notes that mitigation of damages is an affirmative defense, and a "potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction." *Perez v. Alta-Dena Certified Dairy, LLC*, 647 F. App'x 682, 684 (9th Cir. 2016).

Rowell alleges that she was paid $15.50 an hour, and that she worked a fixed schedule of eight hours a day for five days a week. (Compl. ¶ 18.) UPS provides extrinsic evidence to support that Rowell earned $15.50 an hour (or approximately $954.00 per month). (Castaldi-Inman Decl. ¶ 4.) Therefore, considering that Rowell was terminated on January 6 and the undisputed fact that her employment was set to be terminated at the end of January, during which period Rowell would have worked five days a week, the claim for lost wages places **$2,108** ($15.50 x 8 hours x 17 days) in controversy. Accordingly, given the agreed-upon end date of Rowell's seasonal employment, there are no future lost wages in controversy in this action.

### 3. Emotional Distress Damages

Next, courts may consider emotional distress damages when determining the amount in controversy. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). "[W]here the plaintiff does not allege any specific amount of [emotional distress] damages . . . the removing party may submit evidence of jury verdicts in similar cases." *Aguilar v. Wells Fargo Bank, N.A.*, No. 5:15-cv-01833-AB (SPx), 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015) (citing *Kroske*, 432 F.3d at 980). "[T]he cases must be factually identical or, at a minimum, analogous to the case at issue." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012). Courts are not required to include emotional distress damages as part of the amount in controversy when the party asserting jurisdiction fails to provide evidence of jury awards from sufficiently similar cases. *Aguilar*, 2015 WL 6755199, at *6; *see also Rybalnik v. Williams Lea Inc.*, No. 2:12-cv-04070-ODW (AGRx), 2012 WL 4739957, at *3 (C.D. Cal. Oct. 4, 2012) ("[M]erely pointing to cases where juries have awarded

hefty damages sums in the past without further explanation . . . how the facts in those cases compare to the facts presented here is . . . insufficient to meet [the] burden to establish the amount in controversy by a preponderance of the evidence.").

Here, UPS provides examples where, in the context of employment actions, courts in this district have regularly found it appropriate to apply a 1:1 ratio of emotional distress damages relative to economic damages for purposes of calculating the amount in controversy requirement. *See Cotoc v Dolex Dollar Express, Inc.*, No. 8:20-cv-06066-JAK (MAAx), 2021 WL 3783581, at *6 (C.D. Cal. Aug. 25, 2021); *Cuevas v Lowes Home Ctrs., LLC*, No. 2:20-cv-02755-PSG (KSx), 2020 WL 6439174, at *5–6 (C.D. Cal. Aug 5, 2020); *Garfias v. Team Indus. Servs., Inc.*, No. 8:17-cv-04282-JAK (AGRx), 2017 WL 4512444, at *5 (C.D. Cal. Oct. 10, 2017). The Court considers this ratio to be reasonable to determine the amount in controversy in this case. Applying the 1:1 ratio, the value of Rowell's emotional distress damages is **$2,108**.

### 4. Punitive Damages

Punitive damages are to be included in the amount in controversy analysis when they are sought in the complaint, as they are here. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). California law allows for the recovery of punitive damages in cases alleging FEHA violations, wrongful termination, and intentional infliction of emotional distress. *See Commodore Home Sys., Inc. v. Superior Ct.*, 32 Cal. 3d 211, 221 (1982) ("[I]n a civil action under the FEHA, all relief generally available in noncontractual actions, including punitive damages, may be obtained."); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686, 693 (2009); *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 176 (1980). In cases where the defendant is a corporation, "the evidence must demonstrate an officer, director or managing agent . . . committed, authorized or ratified an act of malice, oppression or fraud to create a genuine issue of material fact on punitive damages." *McInteer v. Ashley Distrib. Servs., Ltd.*, 40 F. Supp 3d 1269, 1295 (C.D. Cal. 2014) (quoting *Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013)). "In providing evidence to demonstrate the amount of punitive

damages in controversy, the removing party may point to jury verdicts in analogous cases." *Ulloa v. Cal. Newspaper Partners*, No. 2:20-cv-11776-JAK (AGRx), 2021 WL 6618815, at *7 (C.D. Cal. Oct. 21, 2021).

"There is no set rule on how to calculate a potential award of punitive damages in connection with the amount in controversy analysis at the time of removal." *Garfias*, 2017 WL 4512444, at *5. However, similar to emotional distress damages, courts have often found a 1:1 ratio between punitive and economic damages to be reasonable for the purposes of calculating the amount in controversy. *See id.* (applying a 1:1 ratio for punitive damages as a "familiar method" in an action for discrimination in response to disability leave); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698–701 (9th Cir. 2007) (affirming the use of the 1:1 ratio in an action for violations of wage and hour laws). Applying this standard here, the estimated value of punitive damages is **$2,108**.

5. *Attorneys' Fees*

Next, Rowell seeks attorneys' fees and costs. (Compl., Prayer for Relief.) "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The measure of fees is those which accrue until the action is resolved. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002).

FEHA authorizes an award for attorneys' fees to the prevailing party, and thus courts may consider attorneys' fees in calculating the amount in controversy. Cal. Gov't Code § 12965(c)(6); *see Sasso v. Noble Utah Long Beach, LLC*, No. 2:14-cv-09154-AB (AJWx), 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015). "The reasonableness of attorney's fees, when fees are unascertainable on the face of the complaint, can be calculated by looking to other attorney's fees awards in similar cases." *Garcia v. ACE Cash Express, Inc.*, No. 8:14-cv-00285-DOC (RNBx), 2014 WL 2468344, at *5 (C.D. Cal May 30, 2014).

UPS argues that, in calculating the amount in controversy, courts in this District have found that a reasonable rate for attorneys' fees in employment cases is $300 per hour. (Opposition ("Opp'n") 6, ECF No. 11. (*citing Sasso*, 2015 WL 898468, at *6).) Furthermore, "recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours," and thus 100 hours is "an appropriate and conservative estimate." *Id.*, *see also Avila v. P and L Dev., LLC*, No. 2:18-cv-01211-SJO (ASx), 2018 WL 1870422 at *4 (C.D. Cal. Apr. 18, 2018) (using a 100 hour estimate when removing party "fails to offer a formula or justification for that figure"). Therefore, a reasonable estimate for the attorneys' fees in controversy in this case is **$30,000**.

*6. Injunctive Relief*

Lastly, Rowell seeks injunctive relief "barring Defendants' discriminatory employment policies and practices in the future, and restoring Plaintiff to Plaintiff's former position with Defendants. (Compl., Prayer for Relief ¶ 4.)

"In determining the value of injunctive relief in the amount in controversy the Ninth Circuit considers the value of the injunctive relief to either party in the action." *Ronquillo v. BMW of N. Am., LLC*, No. 3:20-cv-1413-W-WVG, 2020 WL 6741317, at *4 (S.D. Cal. Nov. 17, 2020); *see Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) ("The value of the thing sought to be accomplished by the action may relate to either or any party to the action." (citation omitted)). When seeking injunctive relief, "the potential cost to the defendant of complying with the injunction . . . represents the amount in controversy for jurisdictional purposes." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001); *see also Chavez*, 888 F.3d at 416 (finding that the cost of complying with the injunction may be included in calculating the amount in controversy).

In the Complaint, Rowell attempts to limit her recovery to $74,999 or less. (Compl., Prayer for Relief.) However, although a plaintiff may limit the monetary damages sought in the complaint, the value of injunctive relief cannot be limited. *See,*

*e.g.*, *Martinez v. CotN Wash, Inc.*, No. 2:20-cv-09327-VAP (AGRx), 2020 WL 6799076, at *2 (C.D. Cal. Nov. 18, 2020).

First, the Court declines to consider the value of an injunction "barring Defendants' discriminatory employment policies and practices in the future." (Compl., Prayer for Relief ¶ 4.) As the removing party, UPS offers no evidence regarding what such an injunction would cost. This injunction is not discussed in the Defendant's Notice of Removal or in either party's briefs. Thus, absent any evidence or support, the Court will not estimate the value of such an injunction.

In Rowell's second request for injunctive relief, she seeks an injunction to be restored "to [her] former position with Defendants." (Compl., Prayer for Relief ¶ 4.) Rowell was a "delivery helper," assisting UPS's drivers in delivering packages to customers. (Compl. ¶ 17.) Rowell is not seeking a full-time job. Instead, Rowell is requesting injunctive relief restoring her to the previous position that she held with UPS. (Compl., Prayer for Relief ¶ 4.) Both parties agree that Rowell was a "seasonal" employee, whose employment began about November 29, 2022, and was set to end in January. (Castaldi-Inman Decl. ¶ 3; Answer ¶ 22, ECF No. 6; Rowell Decl. ¶ 2.) Considering the three-month term of employment running from November 29 through January 31, as well as the fact that Rowell worked eight hours a day for five days a week, the estimated value of injunctive relief is **$5,704** ($15.50 x 8 hours x 46 days).

    *7. Total Amount in Controversy*

For the reasons stated above, the amount in controversy for Rowell's claims is **$42,028**, falling short of the $75,000 jurisdictional threshold. The Court does not have diversity jurisdiction over this action.

**B.    Federal Question Jurisdiction**

The Court next turns to Rowell's argument that UPS fails to establish federal question jurisdiction. (Mot. 7.) UPS argues that Rowell's state law claims are preempted by section 301 of the Labor Management Relations Act ("LMRA") because the terms of her employment were governed by a collective bargaining agreement

("CBA"), and thus the Court has original jurisdiction over the matter under 28 U.S.C. § 1331. (NOR ¶¶ 27–36.)

Ordinarily, to determine whether a case arises under federal law, courts use the "'well-pleaded complaint' rule." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (*quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983)). Under this rule, whether a case arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation of . . . defenses." *Taylor v. Anderson*, 234 U.S. 74, 75 (1914).

However, section 301 of the LMRA creates a federal cause of action that preempts all state-law causes of action that would require the interpretation of a labor contract's terms. *Miller v. AT&T Network Sys.*, 850 F.2d 543, 545 (9th Cir. 1988). The Ninth Circuit has adopted a two-prong test to determine whether state-law claims are preempted under section 301: courts ask (1) whether the cause of action involves "rights conferred upon an employee by virtue of state law, not by CBA," or (2) if the right exists independently of a CBA, "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Dent v. Nat'l Football League*, 902 F.3d 1109, 1116 (9th Cir. 2018) (*quoting Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007); *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018)).

UPS argues that the terms and conditions of Rowell's employment, including termination, were governed by two separate agreements that collectively constitute a CBA ("Rowell CBA"). However, preemption is not triggered by either of the two prongs of the Ninth Circuit's test in *Dent*.

First, Rowell's claims do not involve rights conferred by the Rowell CBA. (NOR ¶¶ 32–36.) Rather, Rowell's asserted claims—FEHA violations, wrongful termination, and negligent hiring, supervision and retention—involve rights that arise only under state law. (*See* Compl. ¶¶ 29–84.) Thus, because Rowell's causes of action involve

"rights conferred" to her "by virtue of state law," the first prong is not met. *See Dent*, 902 F.3d at 1116.

Second, courts ask whether litigating the state claim nonetheless requires interpretation of a CBA. "[C]laims are only preempted to the extent that there is an active dispute over the meaning of contract terms." *Id.* (quoting *Schurke*, 898 F.3d at 921). That is not the case here. Although UPS argues that the question of whether Rowell was wrongfully terminated under FEHA would require the Court to interpret the terms of the Rowell CBA, (Opp'n 9), "'[i]nterpretation' is construed narrowly." *Dent*, 902 F.3d at 1116 (quoting *Schurke*, 898 F.3d at 904). "[I]t means something more than 'consider,' 'refer to,' or 'apply.'" *Id.* Preemption applies only if the plaintiff's claims are "inextricably intertwined with consideration of the terms of a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Rowell's claims do not purport "to define the meaning of the contract relationship," *id.*, but rather focus on UPS's conduct during the time of Rowell's employment. Rowell's causes of action do not require the interpretation of either the Rowell CBA. In other words, the claims are not "inextricably intertwined" with the terms of the Rowell CBA, and the claim does not trigger the second prong of the Ninth Circuit's test.

As its terms are not called into question in this action, it is insignificant that the Rowell CBA exists here. *See Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005) ("[T]he need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense."). Therefore, because Rowell's claims involve "rights conferred upon an employee by virtue of state law," *Dent*, 902 F.3d at 1116, the resolution of which do not require the interpretation of the CBA, the Court does not have original federal question jurisdiction over the matter.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion, (ECF No. 10), and **REMANDS** this case to the Superior Court of California for the County of Riverside, Case No. CVPS2301937 located at 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262.

**IT IS SO ORDERED.**

October 13, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**